**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| Trademark Holder Identified in Exhibit 1, | Case No.:22-cv-1354 |
| Plaintiff, | |
| v. | Judge: |
| Does 1-337, As Identified in Exhibit 2, | |
| Defendants. | Magistrate: |

## COMPLAINT

The trademark holder identified in Exhibit 1[1] ("Plaintiff") hereby files this Complaint for, *inter alia*, trademark infringement, counterfeiting, and related claims against Defendants, on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

### THE PARTIES

1.  Plaintiff is a New York corporation having a principal place of business at the address listed in the trademark registration attached in Exhibit 1 and owns the registered trademark ("Mark") being infringed by a cabal of global counterfeiters intent on exploiting unknowing online consumers. This infringing behavior harms Plaintiff.

2.  Defendants identified in Exhibit 2 are all believed to be individuals and unincorporated business associations who, upon information and belief, reside in foreign jurisdictions. The true names, identities, and addresses of Defendants are currently unknown.

---

[1] Plaintiff's name and address is identified on the trademark certificate attached as Exhibit 1. Concurrent with this Complaint, Plaintiff is filing a Motion for Leave to File Exhibits Under Seal requesting that papers identifying Plaintiff and his registered trademark be temporarily sealed pending the outcome of a forthcoming Motion for Temporary Restraining Order. As noted in the Motion for Leave to File Exhibits Under Seal, Plaintiff requests to temporarily seal their name to mitigate the risk that Defendants will transfer assets or destroy evidence upon learning of Plaintiff's identity and trademark.

3.      Defendants conduct their illegal operations through fully interactive commercial websites hosted on various e-commerce sites, such as Amazon, eBay, Etsy, Wish, DHGate, and AliExpress ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit and/or infringing products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois and the Northern District of Illinois. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

4.      Through the operation of their Infringing Webstores, Defendants are directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products as alleged, often times as partners, co-conspirators, and/or suppliers.

5.      Upon information and belief, Defendants are an interrelated group of counterfeiters and trademark infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products. They each produce clothing items produced or printed at the same facilities using the same substandard production techniques featuring the Plaintiff's Mark.

6.      Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting and infringing operations. The identities of these Defendants are presently unknown.

7.      Defendants have created the Defendant Internet Stores, operate under one or more aliases, and are advertising, offering for sale and selling Unauthorized Products to unsuspecting consumers. Defendant Internet Stores share unique identifiers, establishing a logical relationship between them and suggesting that Defendants' counterfeiting

actions arise out of the same transaction or occurrence, or series of transactions or occurrences.

8.    Defendants are primarily Chinese or connected to other Chinese entities and defendants and all market counterfeit products and/or market their products under the registered trademarks of Plaintiff.  On information and belief, all Defendants source their goods from a common manufacturer or consortium of manufacturers under the direction or influence of local or national governments.

## JURISDICTION AND VENUE

9.    This is an action for trademark counterfeiting and trademark infringement, and unfair competition and false designation or origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

10.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121l.  This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiffs' claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

11.    This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

12.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District.  Venue is also proper in this District because a substantial part of the events or omissions giving rise to

the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

## BACKGROUND FACTS

13.     Plaintiff is engaged in the business of manufacturing, distributing, and retailing products bearing the registered trademark in Exhibit 1 throughout the world, including within the Northern District of Illinois District (collectively, "Plaintiff's Products) under the federally registered trademark identified in Exhibit 1 ("Mark", "Asserted Trademark" or "Asserted Mark"). Defendants' sales of similar and substandard copies of Plaintiff's Products featuring Asserted Trademark ("Counterfeit Products") are in violation of Plaintiff's intellectual property rights and are irreparably damaging Plaintiff.

14.     Plaintiff is the owner of all rights, title, and interest in and to, *inter alia*, the Asserted Mark in Exhibit 1. The registration is valid, subsisting, unrevoked, and uncancelled. The registration for the Marks constitutes *prima facie* evidence of validity and of Plaintiff's exclusive rights to use the Mark pursuant to 15 U.S.C. § 1057(b). A genuine and authentic copy of the U.S. federal trademark registration certificate for the Asserted Mark is attached as Exhibit 1.

15.     Plaintiff's brand, symbolized by the Asserted Mark, is a recognized trademark for Plaintiff's Products. As detailed below, Plaintiff has been using the Asserted Mark for many years in connection with the advertising and sale of the Plaintiff's Product in interstate commerce, including commerce in the State of Illinois and the Northern District of Illinois.

16.     The Asserted Mark has been widely promoted, both in the United States and throughout the world. The whole of the consuming public associates the Asserted Mark with Plaintiff, but also recognize that Plaintiff's Product sold in the United States originates exclusively with Plaintiff.

17.   As of the date of this filing, Plaintiff's Product is sold throughout the nation via an online shop on Plaintiff's website as well as retailed at events.

18.   Plaintiff maintains quality control standards for all of Plaintiff's products, including those sold under the Asserted Mark. Genuine Asserted products are distributed through a nationwide network of distributors and retailers.

19.   The Asserted Mark is a highly visible and distinctive worldwide symbol of excellence in quality and uniquely associated with Plaintiff and, as a result, Plaintiff's Products bearing the Asserted Mark has achieved unparalleled recognition among fishing enthusiasts, resulting in substantial revenues associated with the Plaintiff's Products.

20.   The Asserted Mark has never been assigned or licensed to any of the Defendants in this matter.

21.   The Asserted Mark is a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

22.   Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, marketing, and otherwise promoting the Asserted Mark.

23.   Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the Asserted Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith

24.   Recently, and for a while in the past, Plaintiff has identified the Asserted Mark on the Infringing Webstores and felt the impact of Counterfeit Products designed to resemble authorized retail Internet stores selling the genuine Asserted Products that Defendants had reproduced, displayed, and distributed without authorization or license from Plaintiff in violation of the Asserted Mark.

25.   Defendants' use of the Asserted Mark on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Counterfeit Products is likely to

cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

26.    Defendants have manufactured, imported, distributed, offered for sale, and sold Counterfeit Products using the Asserted Mark and continue to do so.

27.    Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Asserted Mark in connection with the advertisement, offer for sale, and sale of the Counterfeit Products, through, *inter alia*, the Internet. The Counterfeit Products are not genuine products sold by Plaintiff under the Asserted Mark. The Plaintiff did not manufacture, inspect, or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

28.    Defendants falsely advertise the sale of authentic Asserted Products through the Infringing Webstores. Defendants' Infringing Webstore listings appear to unknowing consumers to be legitimate web stores and listings, authorized to sell genuine Asserted Mark Products.

29.    Defendants also deceive unknowing consumers by using the Asserted Mark without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Asserted Mark Product and in consumer product searches within the Webstores.

30.    Indeed, U.S. Customs and Border Protection ("CBP") reports in a January 2020 publication on counterfeiting that commonly owned and/or interrelated enterprises have many online marketplace profiles that appear unrelated:

> Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. This lack of transparency allows one business to have many different profiles that can appear unrelated.

Exhibit 3 at p. 39 (Combating Trafficking in Counterfeit and Pirated Goods).

31.     Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Webstores.  Upon information and belief, Defendants regularly create new Webstores on various platforms using the identities listed in Exhibit 2 of the Complaint, as well as other unknown fictitious names and addresses.  Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their illegal counterfeiting operations, and to prevent the Infringing Webstores from being disabled.

32.     Upon information and belief, each of the Defendants, are working in active concert with one or more manufacturing entities located in China to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use the same infringing product. Attached as Exhibit 5 is a true and accurate copy of a listing by a manufacturer located in China and offering the infringing product sold by the Defendants. Attached as Exhibit 6 is a true and accurate copy of a machine translated version of Exhibit 5.

33.     Further, counterfeiters, such as Defendants, also consult and post information to "seller-defense" websites developed and maintained to provide counterfeiters early notice of recently filed lawsuits, so assets and evidence can be transferred, hidden or destroyed before a temporary asset restraint is instituted. Exhibit 4 provides screen-captures of an

exemplary "seller-defense" website recently identified by Plaintiff.

34.    Even though Defendants operate under multiple fictitious names, there are numerous

similarities among the Defendant Internet Stores. For example, the Defendant Internet

Stores use identical or equivalent language to sell Unauthorized Products.

35.    In addition, the Unauthorized Products for sale in the Defendant Internet Stores bear

similarities and indicia of being related to one another, suggesting that the Unauthorized

Products were manufactured by and come from a common source and that, upon

information and belief, Defendants are interrelated.  For example, there are shared colors,

patterns, shapes, and packaging.  The printing techniques are the same as is the method of

reproduction as compared to authentic Plaintiff goods.

36.    The Defendant Internet Stores also include other notable common features, including

common payment methods, identically or similarly appearing products, and identical or

similarly priced items.

37.    Upon information and belief, Defendants will continue to register or acquire listings for

the purpose of selling Counterfeit Goods that infringe upon the Asserted Mark unless

preliminarily and permanently enjoined.

38.    Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGMENT
### (15 U.S.C. § 1114)

39.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

herein.

40.    The Plaintiff's Asserted Mark and the goodwill of the business associated with it in the

United States and throughout the world are of great and incalculable value.  The Asserted

Mark is highly distinctive and has become universally associated in the public mind with

Plaintiff's Products. Consumers associate the Plaintiff's Asserted Mark with the Plaintiff as the source of the very highest quality products.

41.     Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's Asserted Mark and the fact that Defendants' Counterfeit Products are sold using marks identical or confusingly similar to the Plaintiff's Asserted Mark, the Defendants have manufactured, distributed, offered for sale and/or sold the Counterfeit Products to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff's Products, in or affecting interstate commerce.

42.     Defendants' use of copies or approximations of the Plaintiff's Asserted Mark in conjunction with Defendant's Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

43.     The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

44.     The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

45.     The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such,

Defendants' use is likely to cause confusion to the general purchasing public.

46. By misappropriating and using the Plaintiff's Asserted Mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

47. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

48. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Asserted Mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

49. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT THREE
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES
### (815 ILCS 510)

50. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

51. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

52. By misappropriating and using the Plaintiff's Asserted Mark and trade names,

Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

53.    Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to the Defendants' profit and to the Plaintiff's great damage and injury.

54.    Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 et seq., in that Defendants' use of the Plaintiff's Mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

55.    Plaintiff have no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1.    That Defendants, their affiliates, officers, agents, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

    (i)    using the Plaintiff's Asserted Mark or any reproduction, counterfeit, copy or colorable imitation of the Plaintiff's Products in connection with the distribution, advertising, offer for sale and/or sale of counterfeit Plaintiff's Products; and

    (ii)    passing off, inducing or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff; and

(iii)    committing any acts calculated to cause consumers to believe that Defendants'

Counterfeit Products are those sold under the authorization, control, or

supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected

with Plaintiff;

(iv)    further infringing the Plaintiff's Asserted Mark and damaging Plaintiff's

goodwill;

(v)    competing unfairly with Plaintiff in any manner;

(vi)    shipping, delivering, holding for sale, distributing, returning, transferring or

otherwise moving, storing or disposing of in any manner products or inventory

not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or

offered for sale, and that bear the Asserted Mark or any reproductions, counterfeit

copies, or colorable imitations thereof;

(vii)    using, linking to, transferring, selling, exercising control over, or otherwise

owning or operating the Infringing Webstores, listings, or any other domain name

that is being used to sell or is the means by which Defendants could continue to

sell Counterfeit Products;

(viii)    operating and/or hosting websites at the Infringing Webstores and any other

domain names registered or operated by Defendants that are involved with the

distribution, marketing, advertising, offering for sale, or sale of any product

bearing the Plaintiff's Asserted Mark or any reproduction, counterfeit copy or

colorable imitation thereof that is not a genuine product or not authorized by

Plaintiff to be sold in connection with the Plaintiff's Asserted Mark;

(ix)    registering any additional domain names that use or incorporate any of the

Plaintiff's Asserted Mark; and,

(x)    possessing any product bearing the Plaintiff's Asserted Mark or any reproduction,

counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's Asserted Mark. As part of compliance with this provision, we ask that Defendants or those who possess Defendants' infringing goods, segregate and destroy infringing goods.

2.      That Defendants, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court.

3.      Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Webstore hosts or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of Counterfeit Products using the Plaintiff's Asserted Mark;

4.      That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Asserted Mark be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117;

5.      In the alternative, that Plaintiff be awarded statutory damages of One Hundred Thousand United States Dollars and No Cents ($100,000.00) for each and every use of the Plaintiff's Asserted Mark counterfeited by each Defendant.

6.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7.      Grant Plaintiff such other and further legal relief as may be just and proper.

Dated: <u>March 15, 2022</u>                                    Respectfully Submitted,

                                    By:    <u>/s/ Rishi Nair</u>
                                                                    Rishi Nair
                                                            ARDC # 6305871
                                                    Keener and Associates, P.C.
                                            161 N. Clark Street, Suite #1600
                                                            Chicago, IL 60601
                                                                (312) 375-1573
                                            rishi.nair@keenerlegal.com